1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

9

10

11

12   PROGRESO PRODUCE LTD 1 LP, a          )   CASE NO. CV 08-04520 MMM (AJWx)
     Texas Corporation and PACIFIC WEST    )
     MARKETING, INC., a California         )
13   Corporation,                          )   ORDER AWARDING CROSS-CLAIMANT
                                           )   BANCO POPULAR NORTH AMERICA'S
14                 Plaintiffs,             )   ATTORNEYS' FEES AGAINST CROSS-
                                           )   DEFENDANTS ALEX AND MARIA
15         vs.                             )   HALL
                                           )
16   TRITON IMPORTS, a California          )
     Corporation dba TRITON                )
17   INTERNATIONAL; MARIA HALL, an         )
     individual; ALEX HALL, an individual; )
18   and BANCO POPULAR NORTH               )
     AMERICA, a New York Corporation,      )
19                                         )
                   Defendants.             )
20   _____)

21

22

23                        **I.  BACKGROUND**

24         On May 11, 2008, the court granted Banco Popular North America's motion for summary

25   judgment on its cross-claims against defendants Alex and Maria Hall.  Because the commercial

26   guarantees on which Banco's claims were based provided for attorneys' fees, the court directed

27   Banco to submit documentation evidencing the fees it incurred litigating its claims against the

28   Halls.

# II. DISCUSSION

## A.    Standard Governing Reasonableness of Attorneys' Fees

Once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* This figure, which is known as the "lodestar," presumptively provides an accurate measure of reasonable fees. See *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (discussing the calculation of attorneys' fees in the context of a civil rights suits under 42 U.S.C. § 1988); *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986) (same). Although a "district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary,'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. 424), a court may increase or decrease the lodestar amount only in rare or exceptional cases. See *Harris*, 24 F.3d at 18 ("[o]nly in rare instances should the lodestar figure be adjusted on the basis of other considerations"); *Clark*, 803 F.2d at 990-91 ("upward and downward [adjustments] . . . to the lodestar amount are sometimes appropriate, albeit in 'rare' and 'exceptional' cases").

A court employing this method to determine the amount of an attorneys' fees award does not directly consider the multi-factor test developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975).[1] Rather, as a first step, it determines the lodestar amount, which subsumes

---

[1]Under the *Johnson/Kerr* test, the factors considered in determining the amount of attorneys' fees awarded include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70; see also *Johnson*, 488 F.2d at 717-19.

2

certain of the *Kerr/Johnson* factors, i.e., the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained. See *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Clark*, 803 F.2d at 990-91 and n. 3; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988). Next, the court looks to the *Johnson/Kerr* factors that have not been subsumed in the lodestar calculation to determine whether to increase or reduce the presumptively reasonable lodestar fee. See *Clark*, 803 F.2d at 991 (determining that upward adjustments to the lodestar figure were justified by factors such as the undesirability of a case, preclusion from other work, and the uncertainty of receiving any fee).

## B.    Reasonableness of the Hourly Rates

The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services. See *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003); *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). The proper rate to utilize in computing fees is that which a lawyer of comparable skill, experience and reputation would command in the relevant community. *Blum*, 465 U.S. at 895 & n. 11. The party requesting fees bears the burden of producing satisfactory evidence that the requested rates are in line with prevailing rates for lawyers of reasonably comparable skill and reputation in the community. *Jordan*, 815 F.2d at 1263. The relevant community is that in which the district court sits. See *Schwartz v. Secretary of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Banco seeks fees at the rate of $195 per hour. Banco's lead counsel, Susan Vaage, declares that she has "been practicing law for over thirty years, primarily in the area of creditor's rights litigation," and that her rate of $195 per hour is "well below [that of] attorneys with comparable levels of experience in the Los Angeles area."[2] Banco also seeks compensation at a rate of $195 per hour for two associates who worked with Vaage on the case.[3] Finally, Banco seeks compensation at a rate of $100 per hour for work performed by a paralegal. Based on

---

[2]Declaration of Susan L. Vaage Re: Attorneys' Fees Incurred for Counter-Claimant's Counter-Claim ("Vaage Decl."), ¶ 3.

[3]*Id.*

1   Vaage's declaration[4] and the court's own knowledge of prevailing market rates, the court

2   concludes that these rates are reasonable and in line with prevailing rates in the relevant

3   community.  See *Garcia-Goyco v. Law Environmental Consultants, Inc.*, 428 F.3d 14, 22 (1st

4   Cir. 2005) ("The court also was within its discretion in relying upon its own knowledge and

5   experience regarding attorneys' rates and the local market"); *Hanig v. Lee*, 415 F.3d 822, 825

6   (8th Cir. 2005) ("When determining reasonable hourly rates, district courts may rely on their own

7   experience and knowledge of prevailing market rates"); *Guides, Ltd. v. Yarmouth Group Property*

8   *Management, Inc.*, 295 F.3d 1065 (10th Cir. 2002) ("Where a district court does not have before

9   it adequate evidence of prevailing market rates, the court may use other relevant factors, including

10  its own knowledge, to establish the rate"); see also *Plan Administrator v. Kienast*, No.

11  2:06-cv-1529, 2008 WL 1981637, *4 (W.D. Pa. May 2, 2008) ("If a party fails to meet its burden

12  to demonstrate a prima facie case that the requested rates were the prevailing rates in the

13  community, 'the district court must exercise its discretion in fixing a reasonable hourly rate,'"

14  quoting *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996));

15  *Moreno v. Empire City Subway Co.*, No. CV 05-7768 (LMM) (HBP), 2008 WL 793605, *7

16  (S.D.N.Y. Mar. 26, 2008) (where a fee applicant "has submitted no evidence of the prevailing

17  market rate for attorneys of like skill litigating cases similar to plaintiff's . . . it is within [the

18  court's] discretion to determine the reasonable hourly rate at which plaintiff[']s counsel should be

19  compensated based on [the court's] familiarity with plaintiff's case and the prevailing rates in the

20  [relevant community]"); *Shephard v. Dorsa*, No. CV 95-8748 ER (JGx), 1998 WL 1799018, *2

21  (C.D. Cal. July 2, 1998) (determining a reasonable hourly rate based on "(1) the Court's own

22  experience in considering the prevailing market rates in Los Angeles, (2) other fee awards in the

23  relevant market, and (3) ALTMAN WEIL, PENSA, SURVEY OF LAW FIRM ECONOMICS (1996)" in

24  _____

25      [4]Vaage's declaration is not sufficient, standing alone, to support a finding of the
    reasonableness of the rate charged. See *Intel Corp. v. Terabyte International, Inc.*, 6 F.3d 614,
26  622 (9th Cir. 1993) ("'The fee applicant has the burden of producing satisfactory evidence, in
    addition to the affidavits of its counsel, that the requested rates are in line with those prevailing
27  in the community for similar services of lawyers of reasonably comparable skill and reputation,'"
28  quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

1   a case where the fee applicant failed to meet his burden of establishing the reasonableness of the

2   requested hourly rate).

3   **C.    Reasonableness of the Hours Expended**

4          A court may award attorneys' fees only for the number of hours it concludes were

5   reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good

6   faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary"). "The

7   fee applicant bears the burden of documenting the appropriate hours expended . . . , and must

8   submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397

9   (9th Cir. 1992); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("counsel

10  bears the burden of submitting detailed time records justifying the hours claimed to have been

11  expended"); *Pac. W. Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988)

12  ("The cases do not indicate that every minute of an attorney's time must be documented; they do,

13  however, require that there be adequate description of how the time was spent, whether it be on

14  research or some other aspect of the litigation. . .").

15         According to the billing records submitted with Vaage's declaration, Banco's counsel spent

16  170.7 hours litigating Banco's counterclaims against the Halls, and recorded $33,286.50 in time

17  charges.  In addition, a paralegal worked 4.8 hours and billed $480.00.  The party opposing the

18  fee application has the burden of rebuttal that requires submission of evidence to the district court

19  challenging the accuracy and reasonableness of the hours charged or the facts asserted by the

20  prevailing party in its submitted affidavits.'" *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir.

21  1994) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993)).  Even where no

22  rebuttal is presented, however, the court has an independent obligation to review the fee request.

23  *Gates*, 987 F.2d at 1401.  Courts may reduce the number of hours compensated if the party

24  seeking a fee award submits inadequate documentation.  See *Cunningham*, 879 F.2d at 484 (citing

25  *Hensley*, 461 U.S. at 433).

26         Among the hours for which Banco seeks compensation is worked performed by Vaage in

27  connection with the filing of a third party claim against a non-PACA creditor that sought to levy

28  on funds owed to Triton and covered by Banco's UCC-I financing statement.  The attorneys' fees

clause in the guarantees provides that "Guarantor agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. . . . Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings . . . appeals, and any anticipated post-judgment collection services. Guarantor shall pay all court costs and such additional fees as may be directed by the court." As can be seen, the agreement does not specifically provide for an award of fees related to a third party claim that was not filed to enforce the guaranty.

It is possible, however, to interpret the agreement providing authority for a court to award fees for work in a related proceeding where appropriate. Federal courts sitting in diversity apply state law to determine whether to award fees for work performed in a related case connected with the substance of the case before the court. See *Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992); *City of Alturas v. Pacific Power & Light Co.*, No. 93-17044, 1995 WL 325776, *2 (9th Cir. May 30, 1995) (Unpub. Disp.). Because Banco's claims against the Halls are based on state contract law, the court turns to California law to determine the availability of fees for the third-pary claim.

"California case law clearly provides a trial court discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but [which] was nonetheless closely related to the action in which fees are sought and useful to its resolution." *Children's Hosp. and Medical Center v. Benta*, 97 Cal.App.4th 740, 779-80 (2002). California courts have awarded fees for work on related proceedings where such proceedings "related very directly to the issues presented in the action in which fees were awarded" or where the proceedings "materially contributed to the resolution of the . . . issues presented to th[e] court." *Id*. at 781.

The primary issues involved in the contract claims for which the court is awarding fees are the interpretation and validity of the Halls' guarantees. Banco has not explained how counsel's work on the third party claim relates to its claims against the Halls. Banco's pursuit of the third party claim was directed at securing funds for payment of Triton's debts to Banco. At best, it

appears that the third party claim may have had some impact on the total amount of Triton's debt, and thus on the Halls' liability.  The court does not believe, however, that Banco's pursuit of the third party claim  had an impact on the issues in this case sufficient to warrant an award of fees for work on that claim.  The court therefore declines to award fees incurred in connection with the third party claim.   Based on its examination of these records, the court concludes that the balance of the hours expended by Banco's counsel was reasonable.  The fees requested by Banco total $33,766.50.   Of this amount, $3,188 represents work on the third party claim.[5] Accordingly, the court awards Banco $30,578.50 in attorneys' fees.

## III.  CONCLUSION

For the reasons stated, the court awards Banco $30,578.50 in attorneys' fees, jointly and severally against Alex and Maria Hall.

DATED: June 15, 2009

_____

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

_____

[5]Vaage Decl., Exh. 1 (entries dated October 2, October 6, October 8, October 9, October 10, and October 27.